Sutlipp, J.
The question presented by the facts of this case, must be resolved by the application of the rules of descent prescribed' by the statute law of this State, to such a state of facts.
Upon the birth of the child William, on the 10th of May, 185.4, he succeeded to, and became invested with all the title and right to the real estate of which his father William Pence, died seized on the 15th day of January, 1854. The lands were, however, held by the child and heir, subject to the debts and existing liabilities of the intestate, and to the dower of the widow. The lands were ordered to be, and were sold for the payment of such existing debts in the lifetime of the child and heir. And there is no doubt as to the fact, that the *293 residue of the proceeds of the sale, over the payment of the debts and liabilities of the intestate, belonged to the child William. But William the child, having died, the question arises, to whom does the money descend, under our statute ?
In relation to lands, our statute of descent, of July 1858, provides that, “ If there be no children or their legal repre sentatives living, the estate shall pass to the brothers and sisters of the intestate, etc. ... If there be no brothers or sisters . . . (as in this case), “ the estate shall pass to the next of kin to the intestate, of the blood of the ancestor from whom the estate came.” And this course of descent would, in this case, entitle the plaintiffs to the lands left by the intestate ■child.
It is provided, however, by the same act, that “ if any person die intestate, leaving any goods, chattels or other personal estate,” in a like case, the same “ shall ascend to the father; ■if the father be dead, then to the mother.” And this course of descent would carry the estate to the mother of the intestate child.
The question therefore, depends upon the character of the ■estate at the time of the descent cast, by the death of the child William. If real estate it preserves the first course of •descent prescribed by the statute; if personal estate, the last.
Recurring then to the familiar distinction between things real, and things personal, things real being such as are fixed and immoveable, as lands, tenements, etc., and things personal being goods, money, and other moveables ; independent of cir.cumstances hereafter alluded to, there could be no question as to the class to which the estate in controversy belongs; While the land after sold continued to remain real estate, its price, the money when received, was obviously to be regarded only as personal estate. And the money so received by Saunders, the administrator upon the sale of the land, as the .price thereof, when received, was held in trust for William the child, in his lifetime, subject to the rights of creditors, as William so held the lands. Eor the money being the purchase price of the lands, must necessarily belong to the owner ■of the land subject to the same liabilities resting upon the *294 lands in favor of creditors. It follows, therefore, that the fund remaining in the hands of Saunders, after paying such liabilities, the debts for which the sale of the lands was ordered, belonged to and was the property of William the child If Saunders had refused to pay the sum to him, and the child had still lived, his right of action against Saunders would have been unquestionable to recover, not the real estate, the land, but the personal, the money, as its price so remaining and belonging to him, as the owner of the land at the time of the sale. And even if the money had been paid over by Saunders to the child, in his lifetime, and the same had been invested, or held by his guardian, its character as real or personal property, would not thereby have been changed; andón the decease of the child, it being still the price or proceeds-of the sale of real estate, if such fact controls the descent of the money in this, it obviously would in that case.
We have, then, this fact shown by the record : An infant child died leaving a sum of money, which by the provision of our statute, in the absence of any surviving brother or sister,, belongs to the mother, as next of kin.
Is there anything in 'our statute that excepts money which is the price or proceeds of real estate of such child from the general prescribed course of descent of the personal property of the intestate ? -The language of the statute is, “ If any person shall die intestate, leaving any goods, chattels, or other personal estate, such goods, chatties, or other personal estate,, shall be distributed agreeably to the foregoing course prescribed in the second section of this act; ” which, in this case, would make the mother the representative of the deceased child. There is, then, no exception made by our statute, as to the distribution of personal property. If personal it belongs to the mother; if real estate, to the plaintiffs as the-brothers and sisters of the ancestor William Pence, the father from whom the lands descended to such child, the intestate.
It is insisted on the part of the plaintiffs, that this case is embraced in section 157 of the Administrators’ Act of 1840,. which provides as follows: “In all cases of a sale by an executor or administrator of part or the whole of the real estate *295 of the deceased, under an order of court, whether such executor or administrator shall have been appointed in this State or elsewhere, the surplus of the proceeds of the sale, remaining on the final settlement of the account, shall be considered as real estate, and shall be disposed of accordingly.”
This provision of the statute has respect to the estate of the intestate, or the testator, for the settlement of whose estate the lands were sold. The sale in this case was made for the payment of the debts of William, senior, as lands of which he had died seized. The lands had descended to William, the posthumous child and heir, charged with the debts for the payment of which they were sold, and also subject to dower of the widow, the mother of the heir. And on sale of the lands the statute applied to the proceeds; and so after the the assignment of dower in solido, and the payment of the debts therefrom, the surplus of the proceeds of the sale, as to the heir, was considered as real estate, and was disposed of accordingly; giving the title to the same to the child, the heir, alone, the same as if it had been a residue of the land unappropriated in such settlement of the estate. Whereas if it had not been so regarded, but regarded as personal property, the widow, and mother of the posthumous child, would have been entitled to one-half of the first four hundred dollars, and to one-third of all the residue of such surplus. And upon the settlement of the estate of William, senior, for which the lands were so sold, and this surplus disposed of by suffering the title in the same to pass to the child and heir of the intestate, the same as if real estate, the office of this provision of the statute was fully performed. The money would be taxed in the hands of the guardian as money, not as land; and in all respects be regarded, so far as the provisions of this statute were intended to operate, as it really was in fact, personal property, and not real éstate.
Any other construction of this provision of the statute, would seem necessarily to lead to an absurdity.
If the heir had been an adult, and died leaving a wife and children, while the money so remained, then it could not be doubted that the same would, in its distribution between tha *296 children and widow of such intestate, be governed by the law regulating personal rather than real property. This statute, then, can not affect the case.
There remains only to be considered, the question whethei the money in this case can, from circumstances, be regarded and treated as real estate.
Cases often arise under wills where money is regarded and treated in law as real estate, as lands. Thus where the testator has directed a specific sum of money to be invested in lands, or a particular lot of land to be sold, and the proceeds of the sale to be invested in other lands, courts so far regard that as done which ought to be done to carry out the intention of the testator, as to regard and treat the money so to be invested in real estate, as real estate. And so, too, cases frequently arise where the personal chattels and money of an intestate are treated and regarded by the courts as real estate. Where the intestate may have intended to construct a building for the improvement of his real estate, and furnished building materials for consummating the work, and died before completing the same, the materials furnished upon the ground for the completion of the building, although personal chattels merely, may be regarded as belonging to, and part of the realty, as well as the unfinished structure upon the land. See Fletcher v. Ashburner, 1 Bro. C. C., 497; and Gray et al v. Hawkins’ adm’r. 8 O. St. Rep., 449.
But these cases, I apprehend, will be found to extend the rule only to personal property actually appropriated, or designed by the intestate to be appropriated, and for the interest of the estate to be consummated; or directed to be so appropriated by the testator.
There is, also, to be found, a class of cases under the head of resulting trusts, where money, the proceeds of lauds, is to be regarded as representative of the lands sold, and is treated as real estate.
But it is impossible to resolve the facts of this case under any of those examples. At the time of the sale of these lands, William was as absolutely the proprietor as if he had held the same by a deed of sale or gift from his father, sub *297 ject only to the incumbrance for the payment of which the lands were sold. His title under that incumbrance could not have been more perfect, if he had lived to the years of majority before the sale. Nor could the sale have more clearly carried the title to the purchaser, if the sale had been upon a judgment or decree then rendered against him personally. After the sale, in the case supposed, as in the present case, William would have ceased to have any title or estate in the lands ; and would, in that case, as in this, only be entitled to ■the surplus money, the price of the lands by him so befcre held, and sold .therefor. And this money he held absolutely as his own personal estate. It could not have been, in either case, the right of these plaintiffs to compel him to invest it in lands. While he lived, they had no interest in the money, either in law or equity; nor had they in the lands while he .held the same.
The only question, therefore, recurs — was the money, as to William, after the sale of the land, and while he was living, personal property, or real property ? It is not pretended that money received as the price of lands, from that circumstance merely, is to be regarded real, and not personal property. Nor is it pretended that in this case there is shown any •design, or intention, or duty existing on the part of the intestate, to invest the money so belonging to him in lands.
This is, therefore, a case where an intestate, as shown by the record, has died leaving personal estate, and a surviving -mother, who, in the absence of any nearer legal representative, is, by the express provision of our statute, 1 iie representative entitled to his personal estate.
We are unable to perceive any error in the record. The judgment of the district court is therefore affirmed, and the •petition in error in this court must be dismissed.
Brinkerhoff, C.J., and Scott, Peck, and Gholson, JJ., concurred.